IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDY PATER, | ) | CASE NO. 1:15 CV 1295 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Brandy L. Pater under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

[6] ECF # 13.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be remanded as not supported by substantial evidence.

## Facts

**A.   Background facts and decision of the Administrative Law Judge ("ALJ")**

Pater, who was 33 years old at the time of the administrative hearing,[11] has a high school education. She was last employed in 2006 as a machine operator/assembly worker for a plastic product company.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Pater had the following severe impairments: mood disorder, bipolar disorder, posttraumatic stress disorder, generalized anxiety disorder and personality disorder not otherwise specified (20 CFR 416.920 (c)).[13]

---

[7] ECF # 25 (Commissioner's brief); ECF # 18 (Pater's brief).

[8] ECF # 25-1 (Commissioner's charts); ECF # 18-1 (Pater's charts).

[9] ECF # 17 (Pater's fact sheet).

[10] ECF # 27.

[11] ECF # 17 at 1.

[12] *Id*, and ECF # 11, Transcript ("Tr.") Tr. at 194.

[13] Tr. at 43.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Pater's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should do no complex tasks but can do simple routine tasks that are low stress involving no high production quotas, no piece rate work, no work involving arbitration, negotiation, confrontation, or supervision; she should not drive commercially; she should only be required to have superficial interaction with supervisors, coworkers and the public (this is not to exclude contact, on the contrary, she may be in proximity to many people during the day however the time spent with each person should be very short for a stated purpose.[14]

Given that residual functional capacity, the ALJ found Pater incapable of performing her past relevant work as an injection mold machine tender.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Pater could perform. The ALJ, therefore, found Pater not under a disability.

**B.  Issues on judicial review**

Pater asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Pater presents the following issues for judicial review:[15]

---

[14] *Id.* at 44.

[15] ECF # 18, at 1.

- Whether the ALJ erred in applying *Drummond* and as a result, substantial evidence does not support the ALJ's residual functional capacity finding.

- Whether the ALJ erred in evaluating the opinions of treating physician Dr. James.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A. Standards of review**

*1. Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[16]

---

[16] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[17] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[18]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

2.      *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[19]

---

[17] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[18] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[19] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Pater filed only an application for supplemental security income benefits.

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[20]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[21] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[22]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[23] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[24] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[25] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[26]

---

[20] *Id.*

[21] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[22] *Id.*

[23] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[24] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[25] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[26] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[27] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[28] The court noted that the regulation expressly contains a "good reasons" requirement.[29] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[30]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[31] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[32] The former confers a substantial, procedural right on

---

[27] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[28] *Id.* at 544.

[29] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[30] *Id.* at 546.

[31] *Id.*

[32] *Id.*

-7-

the party invoking it that cannot be set aside for harmless error.[33] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[34]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[35] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[36] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[37] *Blakley v. Commissioner of Social Security*,[38] and *Hensley v. Astrue*.[39]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[40] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[33] *Id.*

[34] *Id.*

[35] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[36] *Id.* at 375-76.

[37] *Rogers*, 486 F.3d at 242.

[38] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[39] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[40] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[41] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[42] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[43]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[44] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[45] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[46] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[41] *Id.*

[42] *Id.*

[43] *Rogers*, 486 F.3d at 242.

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

and the treatment reports.[47] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[48]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[49]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[50] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[51] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[52] or that objective medical evidence does not support that opinion.[53]

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Rogers*, 486 F.3d 234 at 242.

[51] *Blakley*, 581 F.3d at 406-07.

[52] *Hensley*, 573 F.3d at 266-67.

[53] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[54] The Commissioner's *post hoc* arguments on judicial review are immaterial.[55]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[56]

- the rejection or discounting of the weight of a treating source without assigning weight,[57]

---

[54] *Blakley*, 581 F.3d at 407.

[55] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[56] *Blakley*, 581 F.3d at 407-08.

[57] *Id.* at 408.

-11-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[58]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[59]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[60] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[61]

The Sixth Circuit in *Blakley*[62] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[63] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[64]

---

[58] *Id.*

[59] *Id.* at 409.

[60] *Hensley*, 573 F.3d at 266-67.

[61] *Friend*, 375 F. App'x at 551-52.

[62] *Blakley*, 581 F.3d 399.

[63] *Id.* at 409-10.

[64] *Id.* at 410.

In *Cole v. Astrue*,[65] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[66]

### 3. *Res judicata*

"Prior findings and determinations" made in previous decisions control in any subsequent hearing "unless there is new and material evidence or a showing of 'changed conditions.'"[67] As *Drummond v. Commissioner of Social Security* provides, it is the burden of the party seeking to escape the *res judicata* effect of the previous findings to introduce substantial evidence of the changed conditions.[68] Indeed, application of *res judicata* in the context of social security proceedings means that a prior finding by the Commissioner is presumed to remain true in a subsequent hearing, with that presumption subject to rebuttal by new material evidence of changed conditions.[69] Significantly, as Magistrate Judge Limbert

---

[65] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[66] *Id.* at 940.

[67] *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

[68] *Id.* at 842.

[69] *Graham v. Astrue*, No. CV 09-06046-SS, 2010 WL 1875669, at *8 (C.D. Cal. May 10, 2010).

pointed out in *Senanefes v. Astrue*,[70] the issue of the establishment of a change of conditions that will overcome the *res judicata* attaching to any prior RFC finding is a separate issue from the matter of what evidence is needed to support a new RFC finding.[71] The party seeking to avoid the application of *res judicata* and show changed circumstances must introduce substantial evidence of that change to overcome the presumption in favor of that application.[72] The burden here, therefore, rests with the Commissioner.

**B.     Application of standards**

This case presents a claim for disability that was reasserted after it was initially denied, with support for the new claim allegedly found in new functional opinions from a treating psychologist who saw Pater after the denial of the first application. Applying the *res judicata* rule of *Drummond*, the ALJ concluded that although the functional opinions in the new evidence were indeed new, they were not material.

Specifically, the ALJ determined that Pater's impairments had not worsened and that her limitations had not increased after the original denial of benefits. In support of the decision to adopt the original RFC from the first decision, the ALJ here assigned the functional opinions of the new treating psychologist and the therapists under the doctor's

---

[70] *Senanefes v. Astrue*, No. 4:10-CV-2157, 2012 WL 2576399 (N.D. Ohio July 3, 2012).

[71] *Id.*, at *5.

[72] *Munford v. Comm'r of Soc. Sec.*, No. 1:12-CV-2915, 2013 WL 4875073 (N.D. Ohio Sept. 11, 2013) (report and recommendation (ECF # 27) issued Aug. 8, 2013), citing *Drummond*, 126 F.3d at 842.

supervision only some weight but gave significant weight to the opinions of the consulting examining physician and the state agency reviewing physician.

Pater here asserts that the ALJ erred by not finding the new evidence to be material, and further erred by not giving good reasons for giving less weight to the opinions of the treating source than to the non-treating sources.

Because the second issue is dispostive, and so will require a remand, I will address it here.  But, this conclusion should not be understood as an adjudication on the merits of the claim related to the materiality of the new evidence, which claim should be re-examined in the course of the remanded proceeding.

Pater appears to have received her treatment largely at Ohio Guidestone, a multi-site facility that, in cases like Pater's, combines counseling by therapists and social workers with treatment by physicians.  As such, Pater's treatment mode was similar to that used in many other cases, in that a treating psychiatrist or psychologist is one member - albeit the leading one - of a team of professionals that interact with the patient.  The difficulty in the context of social security claims is that whatever therapeutic or economic merits such a model may have, it does not fit neatly with model, assumed in the regulations, of single treating physician interacting one-to-one over a period of time with a single patient. The truth is that Marcus Welby has long since retired. Many patients now view his or her treating source as an entity rather than as any one individual.

That said, the cornerstone reason for according treating source opinions a special status is the presumed benefit flowing from the lengthy familiarity of the treating source with

-15-

the patient, as shown by multiple direct contacts between the patient and the physician. Thus, as has been stated elsewhere, while a physician may sign a report prepared by a non-physician and so "adopt" that report as his or her own,[73] the key question for assigning treating source weight to such an opinion remains whether the signing physician personally qualifies as a treating source.[74]

The rule as recently re-stated in *Robinson v. Commissioner of Social Security*, is that for a medical opinion signed by both a non-treating source, such as a social worker or counselor, and a treating source to be given controlling weight as from a treating source, the opinion "must be a medical opinion" and must come from a "treating source."[75] Under the law, there is no difference between "opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed - thus adopted - by a treating psychiatrist."[76]

---

[73] *Robinson v. Comm'r of Social Security*, 2015 WL 5768483, at * 3 (S.D. Ohio Sept. 30, 2015); *Brook v. Colvin*, 2012 WL 4394272, at * 3-4.

[74] *Matelske v. Comm'r of Social Security*, 2013 WL 4520202, at * 13 (W.D. Mich. Aug. 26, 2013); *Bieri v. Astrue*, 2008 WL 4185967, at * 10 (S.D. Ohio Sept. 2, 2008)(despite physician's signature on treating therapist's reports, evidence was that physician was not a treating source in that there was no evidence physician ever saw or evaluated claimant in person).

[75] *Robinson*, 2015 WL 5768483, at * 3.

[76] *Id.*; *see also, Brown v. Comm'r of Social Security,* 2015 WL 4275556, at *11 (N.D. Ohio July 14, 2015)(citing cases)(although Sixth Circuit has not specifically addressed the issue, district court opinions within the circuit hold that a treating physician's co-signature on an opinion from another source at least indicates that the physician agrees with the other source's opinion).

Here, the ALJ dealt with two reports, each signed by Dr. Christopher James, a psychiatrist who actually saw and evaluated Pater, and also by a therapist or counselor.[77] In both instances, the ALJ made no finding that these reports were essentially from a treating source and so entitled to analysis on that basis.  Further, in discussing the reports, the ALJ refers to the non-physician co-signatory as the author of the opinion.[78] On that basis alone, it seems clear that the ALJ failed to view these reports as opinions from a treating medical source, and so failed to evaluate the reports under the proper standard.

Moreover, even under the lesser standard of simply providing a good reason for the weight assigned, the reasons given for assigning limited weight to the May 8, 2012 functional opinion are not good reasons. Specifically, that opinion was that Pater has significant limitations as to dealing with work stresses, completing a normal workweek and leaving her home.[79] As evidence to the contrary, the ALJ cites the fact that Pater was able to leave her home to attend the hearing itself, as well as treatment notes that Pater was stable on her medication and that she had been "making progress" in her therapy.[80] But, the fact that Pater could bring herself to attend a significant single events such as the hearing or a treatment session is no proof that she is capable of regularly leaving home for daily work. And

---

[77] Tr. at 47.

[78] *Id.*

[79] *Id.*

[80] *Id*.

"stability" in a life situation that did not then include regular employment is equally inapposite to the point raised by the treating source opinion.

Indeed, as Pater points out, the treatment records show that Pater required frequent home visitations from the counseling staff because she often could not leave home to attend counseling sessions at Guidestone.[81] Further, the records also show that when Pater did leave home, she needed to be accompanied by her boyfriend in many cases.[82]

Moreover, while there are a few treatment note references to Pater's progress in her course of therapy, the complete record of treatment notes is substantially weighted toward the opposite conclusion.[83] While the concept of "substantial evidence" recognizes that some contrary evidence may exist in the record that would not support the conclusion reached, substantial evidence does require that the evidence relied upon be such that it could be accepted by a reasonable mind. A few sparse and even ambiguous fragments in a sea of uniformly opposite notations do not constitute substantial evidence supporting a conclusion based on that record.

---

[81] ECF # 18 at 17 (citing record).

[82] *Id*.

[83] *Id*. at 22-23 (quoting 19 treatment notes from 2012-13 documenting increased anxiety; Pater as "overwhelmed;" commenting that although she was making progress, that was because she was staying inside her home, afraid to leave; Pater "visibly stressed," "very stressed," and "making no progress").

-18-

## Conclusion

Accordingly, for the reasons stated, I find that the decision of the Commissioner that Brandy Pater is not disabled is not supported by substantial evidence. Therefore, the matter is remanded for further proceedings consistent with this opinion.

On remand the ALJ must acknowledge the opinions of Dr. James as those of a treating source and analyze those opinions consistent with the analytical framework set out by the Sixth Circuit in *Gayheart*. Having done so, the ALJ must then reconsider that the new evidence submitted in support of this application is not material.

IT IS SO ORDERED.

Dated: June 27, 2016  s/ William H. Baughman, Jr.
United States Magistrate Judge